UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ENERGY MICHIGAN, INC., a Michigan
Corporation; and ASSOCIATION OF BUSINESSES
ADVOCATING TARIFF EQUITY, an
unincorporated Michigan association,        Case No.

          Plaintiffs,                  Honorable:

v.

MICHIGAN PUBLIC SERVICE COMMISSION;     **COMPLAINT FOR**
DANIEL C. SCRIPPS, in his official capacity as   **DECLARATORY AND**
Chair of the Michigan Public Service Commission; and   **INJUNCTIVE RELIEF**
SALLY A. TALBERG and TREMAINE L. PHILLIPS,
In their official capacities as Commissioners of the
Michigan Public Service Commission,

          Defendants.

---

| | |
|---|---|
| Brion B. Doyle (P67870) | Michael J. Pattwell (P72419) |
| VARNUM LLP | CLARK HILL PLC |
| Attorneys for Plaintiff Energy Michigan | Attorneys for Plaintiff ABATE |
| Bridgewater Place, P.O. Box 352 | 212 East Cesar E. Chavez Avenue |
| Grand Rapids, MI 49501-0352 | Lansing, MI 48906 |
| (616) 336-6000 | (517) 318-3100 |
| bbdoyle@varnumlaw.com | mpattwell@clarkhill.com |

---

Plaintiffs, Energy Michigan, Inc. ("Energy Michigan") and the Association of Businesses Advocating Tariff Equity ("ABATE) (collectively, "Plaintiffs"), by and through their respective attorneys, VARNUM LLP and CLARK HILL PLC, state as follows for their Complaint for Declaratory and Injunctive Relief against Defendants, the Michigan Public Service Commission ("MPSC"), as well as Daniel C. Scripps, Sally A. Talberg, and Tremaine L. Phillips in their official capacities as Commissioners of the MPSC (collectively, the "Commissioners"):

**INTRODUCTION**

1. This civil action challenges the constitutionality of a September 15, 2017 order of the MPSC in Case No. U-18197 (the "September 15, 2017 Order") and a June 28, 2018 order of the MPSC in Case No. U-18444 (the "June 28, 2018 Order") (collectively, the "MPSC's Buy Local Power Rule") whereby the MPSC ruled that, pursuant to Section 6w of Public Act 341, MCL 460.6w, the MPSC could impose, and then did seek to so impose, a protectionist local clearing requirement on individual load serving entities (the "Individual LCR"), the operation of which grossly impairs and in some cases prevents alternative electric suppliers ("AESs") from selling, and Michigan's retail open access ("ROA") customers from buying, electric capacity resources generated outside of Michigan.

2. As a state regulatory agency, the MPSC derives its authority from the State of Michigan. It is therefore subject to all limitations imposed on the State of Michigan by the Constitution of the United States, including those imposed by the dormant Commerce Clause.

3. The MPSC's Buy Local Power Rule is invalid under the dormant Commerce Clause. The MPSC's buy local mandate restricts the use of the federal wholesale capacity market for purposes of purchasing capacity to make in-state capacity demonstrations, thereby disproportionately and negatively affecting AESs whose operations are located outside of Michigan while simultaneously benefiting in-state electric providers. The MPSC has thus failed to regulate evenhandedly to effectuate a legitimate local public interest, and the effects of its regulation on interstate commerce are more than incidental.

4. The MPSC's Buy Local Power Rule is not narrowly tailored to promote the reliability of Michigan's electric grid but rather is broadly tailored to artificially provide economic advantage to Michigan's incumbent utilities at the expense of AESs and ROA

customers who benefit from sourcing their electric capacity from often renewable out-of-state generation resources.

5. A reliable electric grid can be achieved, and has historically been achieved, by means that neither discriminate against interstate commerce nor frustrate the progress delivered by the well-established and federally regulated wholesale capacity markets.

6. For these reasons and the reasons set forth below, the Court should enter appropriate prospective declaratory and injunctive relief.

## PLAINTIFFS

7. Plaintiff Energy Michigan, Inc. is a Michigan non-profit corporation with its principal place of business located at 201 N. Washington Square, Suite 910, Lansing, Michigan 48933. Energy Michigan, as an association, represents licensed AESs in the State of Michigan that compete with regulated, incumbent electric providers (*i.e.*, electric utilities) for the ability to sell electric energy and capacity to customers. Energy Michigan also represents customers who purchase electric energy and capacity from AESs.

8. Plaintiff ABATE is an unincorporated association of large industrial and manufacturing concerns with its principal place of business located at 212 East Cesar E. Chavez Avenue, Lansing, Michigan 48906. Since 1981, ABATE has appeared in countless matters before, the MPSC, the Federal Energy Regulatory Commission ("FERC"), the Midcontinent Independent System Operator ("MISO"), and other regulatory, judicial, and legislative bodies to advocate the adoption of utility and energy rates, terms, and conditions of service, and other tariffs or contracts governing utility and energy services which are just and reasonable, non-discriminatory, non-preferential, equitable, and based on the cost of providing service to each class of utility customer.

9. Plaintiff ABATE's membership is comprised of Michigan's largest industrial and business concerns who take energy service from incumbent monopoly utilities, municipally-owned electric utilities, and, importantly here, AESs. ABATE's members employ almost 100,000 Michiganders and spend approximately $1.5 billion on energy related services in Michigan each year. Those members presently include: AK Steel Corporation; Cargill, Inc.; The Dow Chemical Company; DW-National Standard-Niles LLC; Eastman Chemical Company; Eaton Corporation; Edw. C. Levy Co.; Enbridge Energy, Limited Partnership; FCA US LLC; General Motors LLC; Gerdau MacSteel INC.; Graphic Packaging International, Inc.; Hemlock Semiconductor Operations LLC; J. Rettenmaier USA LP; Marathon Petroleum Corporation; Martin Marietta Magnesia Specialties LLC; Metal Technologies, Inc.; MPI Research; Occidental Chemical Corporation; OX Paperboard Michigan, LLC; Pfizer Inc.; Praxair, Inc.; United States Gypsum Corporation; United States Steel Corporation; WestRock California, Inc.; and Zoetis LLC.

10. ABATE has a substantial interest in this proceeding where several of its members are presently, or desire to be in the future, ROA customers whose rates and access to service will be negatively and directly impacted by the MPSC's imposition of an Individual LCR. Moreover, the MPSC's imposition of an Individual LCR more generally chills and impairs the health and economic viability of a competitive, transparent, and open access electricity market – the protection and maintenance of which is a fundamental tenant of ABATE's mission.

**DEFENDANTS**

11. Defendant MPSC is an autonomous regulatory agency and political subdivision of the State of Michigan responsible for implementing, administering, and enforcing Michigan's

4

energy laws including Section 6w of Public Act 341, MCL 460.6w, and the government entity that imposed the offending Individual LCR by way of the challenged MPSC Orders.

12. Defendant Commissioners, named in their official capacity only, are the government officials responsible for carrying out the duties of the MPSC and the public officials now responsible for the MPSC's imposition of the Individual LCR which both unduly discriminates against interstate commerce, financially harms AESs and ROA customers, provides economic advantage to Michigan's incumbent electric utilities, and will eventually harm general ratepayers by encouraging costly overbuild of unneeded local generation resources.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims brought in this Complaint arise under federal law, specifically the Commerce Clause, and additionally under 42 U.S.C. § 1983.

14. This Court has the authority to grant the requested declaratory relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, and authority to grant the requested injunctive relief under 28 U.S.C. § 1651(a).

15. This Court has jurisdiction to order prospective relief in the form of a declaratory judgment and/or an injunction against Defendants, and in particular, the MPSC in its official capacity as the Michigan agency that issued the challenged MPSC Orders.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### MICHIGAN'S RETAIL ELECTRIC CHOICE LAWS

17. In 2000, Michigan passed 2000 PA 141 ("Act 141") which "restructured," or partially deregulated, the provisioning of electric generation service in the state. Act 141

permitted customers to buy electricity from AESs instead of being limited to purchasing electricity from incumbent utilities. In 2008, by way of Public Act 286, the Legislature maintained retail electric choice, but capped customer participation at 10% of an electric utility's customer load. MCL 460.10a(1).

18. In 2016, the Michigan Legislature again passed new energy laws, including Public Act 341 of 2016 ("Act 341"). Act 341 continued to maintain the 10% retail electric choice provision but added in new provisions pertaining to resource adequacy requirements, particularly those contained in Section 6w of Act 341 ("Section 6w"). MCL 460.6w. The Legislature specifically considered, but then rejected, an individual locational requirement that all electric providers source a certain percentage of electric capacity in the state.

19. Incumbent electric utilities, such DTE Electric Company ("DTE") and Consumers Energy Company ("Consumers"), are headquartered in, have their operations in Michigan, and own or have contracted for most of the electric capacity resources located in Michigan and are therefore financially advantaged by local mandate.

20. Many of the AESs in Michigan, in contrast, either own generation resources located in another state, or enter into bilateral contracts with a generation provider in-state or in another state, or participate in the MISO capacity market in order to serve their Michigan customers, as they are often businesses operating in multiple states with headquarters and operations located outside of Michigan. These AESs and their ROA customers are therefore financially disadvantaged by any local mandate.

21. Retail choice states, like Michigan, have unique wholesale/retail (*i.e.*, federal/state) jurisdictional splits. As the U.S. Supreme Court noted in *Hughes v. Talen*, 136 S. Ct. 1288 (2016):

6

> Until relatively recently, most state energy markets were vertically integrated Monopolies – *i.e..*, one entity, often a state utility, controlled electricity generation, transmission, and sale to retail consumers. Over the past few decades, many States, including Maryland, have deregulated their energy markets. In deregulated markets, the organizations that deliver electricity to retail consumers – often called "load serving entities" (LSEs) – purchase that electricity at wholesale from independent power generators. To ensure reliable transmission of electricity from independent generators to LSEs, FERC has charged nonprofit entities, called Regional Transmission Organizations (RTOs) and Independent System Operators (ISOs), with managing certain segments of the electricity grid.
>
> Interstate wholesale transactions in deregulated markets typically occur through two mechanisms. The first is bilateral contracting: LSEs sign agreements with generators to purchase a certain amount of electricity at a certain rate over a certain period of time. After the parties have agreed to contract terms, FERC may review the rate for reasonableness. . . . . Second, RTOs and ISOs administer a number of competitive wholesale auctions: for example, a "same-day auction" for immediate delivery of electricity to LSEs facing a sudden spike in demand: a "next-day auction" to satisfy LSEs' anticipated near-term demand: and a "capacity auction" to ensure the availability of an adequate supply of power at some point far in the future.

*Hughes,* 136 S Ct at 1292-93. While States and the federal government share in the jurisdiction of regulating electricity, the U.S. Supreme Court has held that "States may not seek to achieve ends, however legitimate, through regulatory means that intrude on FERC's authority over interstate wholesale rates." *Id*. at 1291.

## THE WHOLESALE ELECTRICITY MARKET

22. The two largest incumbent electric utilities in Michigan participate in the MISO, a FERC-approved regional transmission organization ("RTO") that operates in the wholesale energy and capacity markets. MISO is responsible for managing the transmission of electric power in a large geographic area that spans portions of Michigan and 14 other states. To accomplish this, MISO combines the transmission facilities of several transmission owners into a single transmission system. In addition to the transmission of electricity, MISO's functions

7

include capacity resource planning. MISO has established ten local resource zones. Most of Michigan's lower peninsula is located in MISO's local resource zone 7, while the upper peninsula is located in MISO's local resource zone 2.

23.     MISO imposes various resource adequacy requirements upon all of the electric providers that operate in its RTO. Under MISO's system, there generally are no geographic limitations on the capacity resources that may be used by a particular supplier to meet its planning reserve margin requirement. In other words, MISO does not impose a local clearing requirement upon alternative electric suppliers individually, but instead applies the local clearing requirement to the zone as a whole. There is therefore no requirement imposed by MISO on any individual electricity supplier to demonstrate that its energy capacity is located within a particular state, as long as the zone as a whole demonstrates that it has sufficient energy generation to meet federal requirements. MISO also serves as a mechanism for suppliers to buy and sell electricity capacity through an "auction." This allows for the exchange of capacity resources across energy providers and resource zones.

## MPSC ORDERS

24.     In its September 15, 2017 Order, the MPSC held that Section 6w of Act 341 authorizes it to determine and implement an Individual LCR as a part of the capacity obligations for individual electric providers, including AESs. The LCR is also referred to by the MPSC as the "individual forward locational requirement" and functions as a Buy Local Power Rule as described above.

25.     Both Energy Michigan and ABATE appealed as of right the MPSC's September 15, 2017 order to the Michigan Court of Appeals arguing that the MPSC lacked authority under

Section 6w to impose an Individual LCR on AESs and that the order constituted an improperly promulgated rule in violation of the state's Administrative Procedures Act ("APA").

26. On July 12, 2018, the Michigan Court of Appeals unanimously reversed and vacated the MPSC's September 15, 2017 Order, finding that the MPSC lacked state statutory authority to impose an Individual LCR on individual AESs.[1]

27. On April 2, 2020, the Michigan Supreme Court reversed the Court of Appeals, finding that Section 6w does grant to the MPSC the authority to impose an LCR on individual providers, and remanded the case to the Court of Appeals for further review to determine the MPSC's compliance with the APA in imposing the LCR.[2] That case remains pending.

28. In the June 28, 2018 Order, the MPSC approved a so-called incremental need methodology for calculating the Individual LCR and imposed that new requirement upon all electric providers, including AESs. The MPSC's incremental need methodology, however, is divorced from the ostensible purpose of accurately determining local capacity shortfalls where it intentionally displaces from its calculation any new local generation resources constructed after September 15, 2017.

29. By way of that order and with respect to local resource Zone 7, the MPSC instructed its Staff to update its forward locational requirements for each load serving entity based on the publicly announced retirements (after the closure of the record in the case) of two of Consumers' coal generation units, Karn 1 and 2. *See* June 28, 2018 Order, p. 131, attached as

---

[1] *Id.*

[2] *In Reliability Plans of Electric Utilities for 2017-2021*, __ Mich __ ; __ NW2d __ (2020).

**Exhibit A**. This resulted in the final Individual LCR percentages not being set until August 1, 2018, when they were released in the form of a Staff Memorandum to the case docket.[3]

30.   Both Energy Michigan and ABATE appealed as of right the MPSC's June 28, 2018 order to the Michigan Court of Appeals arguing that the incremental methodology is ultra vires and arbitrary and that the order constituted an improperly promulgated rule in violation of the state's APA.

31.   On September 13, 2018, the MPSC issued an order granting Energy Michigan's Motion for Stay in Case No. U-18444 pending state appeals. The parties are presently awaiting a briefing schedule from the Court of Appeals.

### COUNT I: DORMANT COMMERCE CLAUSE, UNDER 42 U.S.C. § 1983

32.   Plaintiffs Energy Michigan and ABATE restate their allegations in the foregoing paragraphs as though set forth here in their entirety.

33.   The MPSC's Buy Local Power Rule is invalid under the dormant Commerce Clause, U.S. Const. art. I, § 8.

34.   This constitutional provision prohibits state laws that discriminate against citizens of other states. Discrimination means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually per se invalid. A state law that discriminates against interstate commerce on its face invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives.

---

[3] *See Memorandum to Michigan Public Service Commission and Resource Adequacy Stakeholders*, from Roger Doherty, Engineer, Resource Adequacy and Retail Choice, re: Updated Capacity Demonstration Process (Exhibit S-25), per Case No. U-18444, June 28, 2018 order," dated August 1, 2018, attached as **Exhibit B**.

35. This constitutional provision also prohibits states and their subdivisions from unduly burdening interstate commerce, even in the absence of federal legislation regulating the activity. Any state action that burdens interstate commerce is invalid if the burden is clearly excessive in relation to the putative local benefits. A state action is invalid if it does not regulate evenhandedly to effectuate a legitimate local public interest, or if its effects on interstate commerce are more that incidental.

36. Although states have the authority to regulate the retail sale of electricity within their own borders, including whether or not to maintain traditional regulated monopolies or to open retail sales to market competition, the sale of electricity on the wholesale market is interstate commerce, which is beyond the authority of the states to regulate. MISO's wholesale market is interstate and interjurisdictional in nature, as it involves the sale and transmission of energy and capacity from generators located in multiple states and in Canada, and the purchase of such commodities by customers in states other than where such generators are located.

37. The members of Energy Michigan and ABATE desire and intend to directly and indirectly purchase electrical capacity and energy generated outside of Michigan on MISO's wholesale energy market in accordance with MISO's applicable tariff and to sell such electricity to their retail customers.

38. The Individual LCR would prevent the members of Energy Michigan and ABATE from using a continuing increasing percentage of such wholesale purchases of electricity generated outside of Michigan to meet the capacity needs of their customers.

39. Absent the Individual LCR, Energy Michigan's members who are AESs would be able to satisfy the capacity needs of their Michigan ROA customers', many of which are ABATE members, by any means that satisfies the MISO reliability tariff requirements, including the

purchase of Zonal Resource Credits ("ZRCs") for electricity generated outside of Michigan through MISO's Planning Resource Auction ("PRA").

40. However, the Individual LCR treats electricity generated outside of Michigan differently from electricity generated within Michigan's borders, thereby discriminating against purchases on the interstate wholesale electricity market and burdening the ability of members of Energy Michigan and ABATE to engage in interstate commerce.

41. Because AES's generation resources are primarily located out-of-state, while those of the incumbent utilities are primarily located in-state, the Individual LCR simultaneously provides a direct economic advantage to Michigan's incumbent utility companies, whose generation facilities are located within Michigan and disadvantages AESs.

42. The Individual LCR directly discriminates against out-of-state resources, as only in-state electric generation assets are counted towards meeting the requirement. No out-of-state resources are allowed to be included in the portfolio of any load serving entity to meet its Individual LCR, regardless of their practical ability to provide similar or identical benefits to Michigan's retail users of electricity. It therefore violates the dormant Commerce Clause.

43. The Individual LCR is also invalid under the dormant Commerce Clause because it imposes market-distorting burdens on interstate and international commerce that far outweigh the purported local benefits. In fact, the putative local benefits are largely illusory.

44. Implementing the Individual LCR deprives the members of Energy Michigan and ABATE of their Commerce Clause "rights, privileges, or immunities" within the meaning of 42 U.S.C. § 1983.

45.     The members of Energy Michigan and ABATE have been injured by these deprivations and are entitled to redress under § 1983. *See Dennis v. Higgins*, 498 U.S. 439 (1991).

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Enter a judgment declaring the Individual LCR imposed by the MPSC Orders unconstitutional in violation of the dormant Commerce Clause of the United States Constitution;

B. Enter a permanent injunction preventing Defendants from implementing the Individual LCR as set forth in the MPSC Orders;

C. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

D. Award such other relief to which the Court may find Plaintiffs are entitled.

Respectfully submitted,

Date:  September 14, 2020

By:     */s/ Brion B. Doyle*
Brion B. Doyle (P67870)
VARNUM LLP
Attorneys for Plaintiff
Energy Michigan
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
bbdoyle@varnumlaw.com

By:     */s/ Michael J. Pattwell*
Michael J. Pattwell (P72419)
CLARK HILL PLC
Attorneys for Plaintiff ABATE
212 East Cesar E. Chavez Avenue
Lansing, MI 48906
(517) 318-3100
mpattwell@clarkhill.com

16906449_1.docx