## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ENERGY MICHIGAN, INC., a
Michigan Corporation; and
ASSOCIATION OF BUSINESSES
ADVOCATING TARIFF EQUITY, an
unincorporated Michigan association,

No. 2:20-cv-12521-DML-APP

HON. DAVID M. LAWSON

       Plaintiffs,

v.

DANIEL C. SCRIPPS, in his official capacity
as Chair of the Michigan Public Service
Commission; and TREMAINE L.
PHILLIPS and SHAQUILA MYERS,
in their official capacities as Commissioners
of the Michigan Public Service Commission,

       Defendants,

and

CONSUMERS ENERGY,

       Intervening Defendant.

_____/

## PLAINTIFFS ENERGY MICHIGAN, INC. AND ABATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56 (ON REMAND) CONCERNING THE MPSC'S ORDER IN U-18444

Plaintiffs, Energy Michigan, Inc., and Association of Businesses Advocating

Tariff Equity, through their counsel, move this Court for Partial Summary Judgment

under Fed. R. Civ. P. 56 with respect to the MPSC's June 28, 2018 Order in Docket

No. U-18444. In support of their Motion, Plaintiffs rely on the attached Brief.

Plaintiffs further verify per Local Rule 7.1(a) of the U.S. District Court for the

Eastern District of Michigan that, before filing this motion, they met with opposing

counsel on August 28, 2025, to discuss the basis for this motion and seek

concurrence in the relief sought. Concurrence was not obtained.

Respectfully Submitted,

*/s/ Zachary C. Larsen*
Michael J. Pattwell (P72419)
Zachary C. Larsen (P72189)
*Counsel for ABATE*
Clark Hill PLC
215 S. Washington Square, Ste. 200
Lansing, MI 48933
(517) 318-3100
mpattwell@clarkhill.com
zlarsen@clarkhill.com

*/s/ Brion B. Doyle*
Brion B. Doyle (P67870)
Timothy J. Lundgren (P62807)
Laura A. Chappelle (P42052)
Justin Ooms (P82065)
*Counsel for Energy Michigan*
Varnum LLP
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501
bbdoyle@varnumlaw.com
tjlundgren@varnumlaw.com
lachappelle@varnumlaw.com
jkooms@varnumlaw.com

Dated: September 2, 2025

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ENERGY MICHIGAN, INC., a
Michigan Corporation; and                       No. 2:20-cv-12521-DML-APP
ASSOCIATION OF BUSINESSES
ADVOCATING TARIFF EQUITY, an
unincorporated Michigan association,            HON. DAVID M. LAWSON

       Plaintiffs,

v.

DANIEL C. SCRIPPS, in his official capacity
as Chair of the Michigan Public Service
Commission; and TREMAINE L.
PHILLIPS and SHAQUILA MYERS,
in their official capacities as Commissioners
of the Michigan Public Service Commission,

       Defendants,

and

CONSUMERS ENERGY,

       Intervening Defendant.

_____/

## PLAINTIFFS ENERGY MICHIGAN, INC. AND ABATE'S BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56 (ON REMAND) CONCERNING THE MPSC'S ORDER IN U-18444

# **TABLE OF CONTENTS**

Table of Authorities ....................................................................... ii

Concise Statement of the Issue Presented.................................... iv

Controlling or Most Appropriate Authority.................................v

I.   Introduction...........................................................................1

II.  Statement of Facts.................................................................2

    A.   Background of Michigan's Energy Laws ............................3

    B.   MPSC's   Imposition of an ILCR Calculated by Incremental Need....................................................................................4

    C.   Testimony at Trial Concerning the Incremental Need Methodology ...................................................................7

    D.   The Sixth Circuit's Opinion Governs Review on Remand.................10

III. Standard of Review..............................................................11

IV.  Argument .............................................................................13

    A.   The Adopted ILCR Can Only Survive Strict Scrutiny if Defendants Prove that an Equity-Based ILCR is "the Only Means of Achieving its Goal of Securing a Reliable Energy Supply."............................................................................13

    B.   Defendants Cannot Demonstrate that an Equity-Based ILCR that Excludes New Generating Resources is the "Only" Means of Achieving a Reliable Energy Supply. ..................................15

        1.   *The ILCR adopted by MPSC is not supported by a "legitimate interest" but rather was justified only by an illegitimate, equity-based rationale.* ............................16

        2.   *Even if the Court found there were no nondiscriminatory alternatives, the ILCR fails strict scrutiny because it is not "narrowly tailored."*..............................................18

Conclusion and Relief Requested ..........................................21

CLARKHILL\07411\1002050\283268359.v10-9/2/25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*,
   249 F.3d 564 (6th Cir. 2001) .................................................................11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...........................................................................12

*C & A Carbone, Inc. v. Town of Clarkstown,
   N.Y.*, 511 U.S. 383 (1994) ............................................................. passim

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...........................................................................12

*Cherry Hill Vineyards, LLC v. Lilly*,
   553 F.3d 423 (6th Cir. 2008) ...................................................................v

*City of Philadelphia v. New Jersey*,
   437 U.S. 617 (1978) ...........................................................................18

*Conservation Force, Inc. v. Manning*,
   301 F.3d 985 (9th Cir. 2002) ...................................................... v, 14, 18

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ...........................................................................19

*Energy Michigan, Inc. v. Michigan Pub. Serv. Comm'n*,
   126 F.4th 476 (6th Cir. 2025) .......................................................... passim

*Exxon Corp. v. Governor of Maryland*,
   437 U.S. 117 (1978) ...........................................................................18

*Granholm v. Heald*,
   544 U.S. 460 (2005) ........................................................................v, 14

*Hughes v. Oklahoma*,
   441 U.S. 322 (1978) .................................................................. 2, 13, 14

*In re Reliability Plans of Electric Utilities for 2017–2021*,
   949 N.W.2d 73 (Mich. 2020) ..................................................................7

*Nat'l Foreign Trade Council v. Natsios*,
   181 F.3d 38 (1st Cir. 1999) ...................................................................19

*New Energy Co. of Ind. v. Limbach*,
   486 U.S. 269 (1988) ...........................................................................15

*Pac. Northwest Venison Producers v. Smitch*,
  20 F.3d 1008 (9th Cir. 1994) ............................................................................18

*Samons v. Nat'l Mines Corp.*,
  25 F.4th 455 (6th Cir. 2022) ..............................................................................15

*United States v. O'Dell*,
  320 F.3d 674 (6th Cir. 2003) ..............................................................................11

*Waste Management Holdings, Inc. v. Gilmore*,
  252 F.3d 316 (2001) ............................................................................................19

*Wyoming v. Oklahoma*,
  502 U.S. 437 (1992) .............................................................................................v

**Statutes**

2008 Mich. Pub. Act 286 ............................................................................................3

Mich. Comp. Laws § 460.10a(1) ...............................................................................3

Mich. Comp. Laws § 460.6w .....................................................................................3

Mich. Comp. Laws § 460.6w(8)(a) ...........................................................................3

Mich. Comp. Laws § 460.6w(12)(d) .........................................................................4

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................12

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

1.  Discriminatory regulations like the ILCR are invalid unless they satisfy strict scrutiny, which requires the State to prove by concrete, record evidence that there are "no other means to advance" a legitimate local purpose other than the particular means chosen. The Commissioners adopted an ILCR justified on the unlawful interest of doing "equity" and cannot show there are no other means to achieve reliability of Michigan's grid other than an ILCR that excludes new resources and is divorced from true "need" nor that this is the "least restrictive means" to accomplish that purpose. Can the incremental need methodology for the ILCR adopted by the MPSC in Docket No. U-18444 survive strict scrutiny?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

1.  *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 392 (1994);
    *Granholm v. Heald*, 544 U.S. 460, 489 (2005); *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 997 (9th Cir. 2002); *Energy Michigan, Inc. v. Michigan Pub. Serv. Comm'n*, 126 F.4th 476, 501 (6th Cir. 2025).

## I.    <u>INTRODUCTION</u>

On remand, the Sixth Circuit gave this Court a narrow task: deciding whether the Commissioners proved that "the ILCR is ***the <u>only</u> means*** of achieving its goal of securing a reliable energy supply." *Energy Michigan, Inc. v. Michigan Pub. Serv. Comm'n*, 126 F.4th 476, 501 (6th Cir. 2025); (ECF No. 157, PageID.19233) (emphasis added). They have not and cannot do so.

Importantly, "*<u>the</u>* ILCR" challenged in this suit was adopted in two successive MPSC Orders—one deciding whether *an* ILCR (generally) should be applied, (ECF No. 123-2), and the other determining the parameters of "the ILCR" (specifically) to be applied, including how it would be calculated. (ECF No. 123-3). In the latter, the MPSC adopted an ILCR unrelated to its purported "reliability" goal. (*Id*.) That cannot satisfy strict scrutiny.

As the Sixth Circuit noted, justifying either of the discriminatory Orders is "no easy task." *Energy Michigan, Inc*, 126 F.4th at 501. "[S]tate laws that discriminate explicitly against interstate commerce" (like the ILCR) "are 'almost always invalid.'" *Id*. And the "strict scrutiny inquiry" here imposes an exacting metric: "whether the state demonstrated that the ILCR is *the <u>only</u> means* of achieving its goal of securing a reliable energy supply." *Id*. (emphasis added). Because "the ILCR" adopted by the MPSC in Docket No. U-18444 is calculated based on an

1

"incremental need" methodology justified only by an equity rationale that the Sixth Circuit already rejected, the Commissioners cannot meet their burden.

Indeed, the Commissioners conceded at the earlier trial that the ILCR's "incremental need" calculation was justified only by an equity rationale the Sixth Circuit has now rejected. And Defendants' experts have not attempted to contradict their prior testimony on this point (nor can they do so). Simply put, an ILCR calculated to support an "equity" rationale serves no "legitimate local purpose." *Energy Michigan, Inc*, 126 F.4th at 501. Nor is such an ILCR narrowly tailored because it levies a discriminatory demand divorced from even the State's suggested "need." Thus, it is nowhere close to the "least discriminatory alternative" that could be adopted. *Hughes v. Oklahoma*, 441 U.S. 322, 337–38 (1978). So, even assuming an ILCR generally could be justified,[1] *this* ILCR cannot be.

Accordingly, the ILCR adopted in Docket No. U-18444 fails strict scrutiny. And this Court must grant partial summary judgment in Plaintiffs' favor.

## II.  <u>STATEMENT OF FACTS</u>

This Court is by now very familiar with the facts of this case. This Statement of Facts thus highlights only the key points pertinent to this "narrow" remand.

---

[1] Though the MPSC cannot satisfy strict scrutiny to justify either Order, this motion does not seek summary judgment on the September 15, 2017 Order in U-18197, which addresses whether an ILCR can be imposed as a general matter.

## A.    Background of Michigan's Energy Laws

Before 2000, retail electric customers in Michigan purchased their electric energy almost exclusively from utilities. (ECF No. 85, PageID.3400, ¶ 36.) But then the Michigan Legislature passed 2000 P.A. 141 ("Act 141") to restructure the retail sale of electric energy and allow retail customers the choice to buy electric energy from AESs (and not just utilities). (*Id.* ¶ 37.) Eight years later, the Michigan Legislature capped customer participation in electric choice at ten percent (10%) of a utility's customer load. Mich. Comp. Laws § 460.10a(1), 2008 P.A. 286.

Then, in 2016, the Michigan Legislature passed 2016 P.A. 341, which added new resource adequacy requirements. Mich. Comp. Laws § 460.6w ("Section 6w"). Section 6w directed the MPSC to require all electric providers to "demonstrate to the [MPSC], in a format determined by the [MPSC], that for the planning year beginning 4 years after the beginning of the current planning year, [each electric provider] owns or has contractual rights to sufficient capacity to meet its capacity obligations as set by the appropriate independent system operator, or [MPSC], as applicable." Mich. Comp. Laws § 460.6w(8)(a). And the statute defined "local clearing requirement" as "the amount of capacity resources required to be in the local resource zone in which the electric provider's demand is served to ensure reliability in that zone as determined by [MISO] for the local resource zone in which the

electric provider's demand is served and by the [MPSC] under subsection (8)." Mich. Comp. Laws § 460.6w(12)(d).

**B.     MPSC's  Imposition of an ILCR Calculated by Incremental  Need**

The Commission sought to impose an individual local clearing requirement ("ILCR") soon after 2016 P.A. 341 passed. In its September 15, 2017, Order in Case Number U-18197, the MPSC determined that, as part of (and in addition to) the four-year forward capacity demonstration requirements, it could also require each AES *individually* to meet a four-year forward local clearing requirement or ILCR. (ECF No. 123-2.) In other words, the MPSC determined it would require each AES to obtain some portion of its electric capacity within the same MISO Zone as the AES's electric load—even though MISO does not impose any such requirement on individual suppliers. (*Id*.; *see also* ECF No. 139-1, PageID.15238.) Because Zone 7 only encompasses the portion of MISO located in lower Michigan, the MPSC's decision would effectively require all Michigan AESs serving load in that Zone to obtain capacity within Michigan. (*Id.*, PageID.15239–40.)

Months later, in its June 28, 2018, Order in Case Number U-18444, the MPSC addressed the questions left unfinished in its prior order: establishing the methodology to calculate the ILCR and imposing the initial ILCR on all electric providers. (ECF No. 85, PageID.3391 ¶ 43 [citing ECF No. 123-3].) The Order entered over ABATE's objections adopted the "incremental need" method proposed

by MPSC Staff but rejected Staff's recommendation to cap an ILCR at 47.5%. (ECF No. 123-3, PageID.4924–26, PageID.5031, & 5036–45.) This was done despite Staff concerns that setting an ILCR over 47.5% would result in a "costly oversupply" of electrical capacity, "saddling Michigan customers with additional, potentially unnecessary, costs." (ECF No. 124-7, PageID.5382–84.) And it was adopted despite the fact that:

> Staff ha[d] gone to great lengths in [U-18444] to stress that rate-regulated utilities have financial incentives to own capacity resources within their service territories, and that given the amount of capacity resources currently owned by DTE Electric and Consumers, as well as the 10% cap on choice load, *the Staff does not believe there is a necessity from a reliability standpoint for AESs to contribute to the forward locational requirement*.

(ECF No. 123-3, PageID.5037) (emphasis added).

As adopted, the "incremental need" method starts with the total amount of capacity resources located in each MISO Zone in Michigan at the time Act 341 went into effect (as evidenced by LSE capacity demonstrations filed with the MPSC in Case U-18197 on or prior to April 20, 2017). (ECF No. 123-3, PageID.4924–26, 5031, & 5036–45; *see also* ECF No. 139-5, PageID.15327–28.) Then it adjusts that number by subtracting any double-counted units, behind-the-meter generation, ZRC purchases, and reported retirements. (*Id.*) This adjusted level is then subtracted from the Zonal LCR value determined by MISO to produce an "incremental" need estimate for additional local capacity resources. (*Id.*; *see also* ECF No. 139-5,

CLARKHILL\07411\1002050\283268359.v10-9/2/25

PageID.15327–28.) This final "need" estimate is then allocated to all Michigan electric providers in the MISO Zone on a "load-ratio share" basis—*i.e.*, in proportion to the share of load they serve. (*Id.*; *see also* ECF No. 139-5, PageID.15327–28.)

MPSC said it would reassess the "need" biennially. (*Id.*; *see also* PageID.15327–28.) But the Order also provided that, when the MPSC does so, the calculation of the ILCR will again start with the total amount of capacity resources located in each MISO Zone in Michigan as of April 2017 but then will *subtract* all newly reported retirements of local generation resources. (*Id.*; *see also* PageID.15327–28.) No new or planned capacity resources will be *added* back in when calculating the "need"—despite those resources actively producing local capacity. (*Id.*; *see also* PageID.15327–28.) Similarly, investments in existing generational resources that have been made to extend the life of those resources and continue their operation are treated as if those resources were planned to be retired and replaced with new resources. (*Id.*) In other words, the ILCR is intentionally disconnected from the true amount of local resources that are claimed to represent the in-state "need." (ECF No. 102, PageID.4052–53 & 4067.)

The initial ILCR percentages were set on August 1, 2018, at 2.7% of the LSEs' PRMR for 2022/2023 and 5.3% of the LSEs' PRMR for 2023/2024. (ECF No. 85, PageID.3391 ¶ 43.) Those have not been adjusted because the MPSC issued an order granting a stay of the June 28, 2018, Order on September 13, 2018. (PageID.3391,

¶ 44.) But projections from both sides for the 2025/26 and 2026/27 planning years were much higher—between 10% and 35%. (ECF No. 102, PageID.3941 & 4043–44.)

After litigation, the Michigan Supreme Court held that the newly added Section 6w allowed the MPSC to impose certain four-year forward capacity obligations and an ILCR on Michigan LSEs. *See In re Reliability Plans of Electric Utilities for 2017–2021*, 949 N.W.2d 73 (Mich. 2020). This case then ensued and, ultimately, proceeded to trial.

### C.  Testimony at Trial Concerning the Incremental Need Methodology

At trial, the MPSC's witnesses confirmed that the calculation of the "incremental need" methodology was developed under an "equity" rationale. Cathy Cole, who served as the Manager of the MPSC's Resource Adequacy and Retail Choice Section, explained at trial that the *sole* reasoning for excluding new resources from the ILCR's "incremental need" calculation is that, "[i]f we counted the new capacity . . . it would be the status quo forever and there would be no contributions to local reliability *from anyone who isn't already contributing*." (ECF No. 101, PageID.3864) (emphasis added).

Likewise, the MPSC's Public Utility Engineer Specialist, Roger Doherty, agreed this was the reason for excluding new resources from the calculation. (ECF No. 102, PageID.4052–53.) Doherty explained that: "[i]f those resources exist, then

_**there wouldn't be a reliability concern**_." (PageID.4067) (emphasis added). He conceded further that "the exclusion of the new resources from the methodology _**is not reliability based, but equity based**_ in terms of who is paying for it." (_Id._) (emphasis added). In other words, it is not a matter of reliability but rather one of "fairness" and of who bears the "costs." (PageID.4009–10 & 4053.)

Doherty had similarly explained in his Supplemental Expert Report that "[e]xcluding new generation resources from the calculation of [the] individual local clearing requirement lends to _a more equitable situation where all LSEs need to contribute_ towards meeting the zone's LCR." (ECF No. 145-8, PageID.18421) (emphasis added). Specifically, Doherty articulated that "[i]f new generation resources are considered every time the local clearing requirement is recalculated, then some LSEs will continue to be responsible for the Zone meeting the local clearing requirement, while a few electric providers who do not contribute local resources to the Zone would get a free ride." (_Id._, PageID.18421–22) (emphasis added). As Doherty further clarified at trial, MPSC's "incremental need" calculation reflected its belief that because "_all customers are benefitting_ from local – from reliability from local resources . . . [and] _therefore, all customers should bear the cost_." (PageID.4053) (emphasis added).

Plaintiffs' expert, James Dauphinais, critiqued the "incremental need" approach in his reports and trial testimony. Concerning the excluded, new generating

resource additions, he observed: "They are there. They are real. They exist. ***They need to be included***" in any calculated ILCR. (PageID.3971) (emphasis added). In other words, these excluded generating capacity resources are those that *have been built* but that the State has decided irrationally to exclude from the calculation of an "incremental need." (ECF No. 139-5, PageID.15327–28.) Since the "incremental need" methodology is based on a calculation involving subtracting in-zone resources from the Zonal LCR value determined by MISO, (*see also* PageID. 15327–28), excluding resources that already exist has nothing to do with determining the existing "need." (PageID.3936–37.) "Incremental *need*" is thus a pseudonym—as the existence of a "need" under MPSC's formula does not express a "real need." (*Id*.)

At no point during trial did anyone offer a justification for the "incremental need" calculation other than equity. This Court thus rightly recited that the incremental need "recommendation was motivated by equity, not reliability, concerns . . . ." (ECF No. 114, PageID.4735.) And the Commissioners have not contended that they must impose an ILCR that exceeds the calculated "need" for in-state resources. Nor can they. On remand, only Doherty has offered an expert report. (**Ex. A**, Doherty Report.) And Doherty's proposed report does not even address concerns regarding the justification of the "incremental need" calculation. (*Id*.)

9

**D.    The Sixth Circuit's Opinion Governs Review on Remand.**

This Court need only resolve one issue on this limited-scope remand. After overturning this Court's holding that the ILCR was not "discriminatory," *Energy Michigan*, 126 F.4th at 487–88, the Sixth Circuit corrected this Court's ruling concerning strict scrutiny.

The Court explained that there were "at least two problems" with this Court's earlier approach. First, the Court rejected the "legitimate local interest" of "achieving reliability in an equitable manner," stating that was not a legitimate local interest. *Id.* at 501. Rather, the Court held that this Court's earlier formulation of legitimate interests "simply repackages a per se violation of the dormant Commerce Clause as an interest in discriminating against those retailers who do not procure their goods locally." *Id.* And such repacking evades dormant Commerce Clause scrutiny. *Id.* The Court indicated that because, here, "equity becomes a proxy for discrimination against interstate commerce," therefore, "that purported local interest should not be part of the strict scrutiny analysis." *Id.*

Second, the Sixth Circuit held that this Court erred in failing to answer the right question. *Id.* The "strict scrutiny inquiry" is "whether the state demonstrated that the ILCR is *the **only** means* of achieving its goal of securing a reliable energy supply." *Id.* (emphasis added). But this Court "never reached that question," instead evaluating "plaintiff's alternatives to the ILCR to see how they stacked up against

10

the ILCR vis-à-vis the interests of the state." *Id*. The Sixth Circuit noted that "the burden [is] on the defendants to make this showing." *Id*. And that requires "more than simply demonstrating that the ILCR is desirable against the backdrop of the status quo or in the abstract . . . ." *Id*. Instead, "defendants need to prove that the ILCR is superior in achieving its goals relative to all other alternatives" that are non-discriminatory. *Id*. That, the Sixth Circuit instructed, "is no easy task" because "state laws that discriminate explicitly against interstate commerce" (like the ILCR) "are '***almost always invalid***.'" *Id*. (emphasis added). With that instruction, the Court remanded for this Court "to resolve *this narrow question* in the first instance." *Id*. (emphasis added).

### III.   <u>STANDARD OF REVIEW</u>

This matter has been remanded under a "narrow" scope of remand. As a "limited scope remand," *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 570 (6th Cir. 2001), the Sixth Circuit "explicitly outline[d] the issues to be addressed by the District Court and create[d] a narrow framework within which the District Court must operate . . . ." Thus, this Court's procedural course must reflect "the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. O'Dell*, 320 F.3d 674, 680–81 (6th Cir. 2003). Namely, the sole question is whether, "with equity removed from the equation . . . the state demonstrated that the ILCR is the ***only*** means of

11

achieving its goal of securing a reliable energy supply." *Energy Michigan*, 126 F.4th at 501 (emphasis added).[2] Within those confines, summary judgment is appropriate.

Summary judgment is appropriate when a "movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking judgment has the initial responsibility of informing the court of the basis for its motion and identifying relevant portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets that burden, the burden shifts the opposing party to present evidence of either: (1) a genuine issue of material fact; or (2) that the moving party is not entitled to judgment as a matter of law. *Id*. at 324.

Only factual disputes that may affect the outcome of the lawsuit are "material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not "material." *Id*. Moreover, a factual dispute is only "genuine" if "the evidence is such that a reasonable [fact-finder] could return a verdict for a non-moving party." *Id*. Opposing parties may not

---

[2] Plaintiffs believe this Court's review must be limited to the evidence presented at trial on the terms of the Sixth Circuit's remand. *See Energy Michigan*, 126 F.4th at 501 (framing the question as "whether the state *demonstrated* that the ILCR is the only means of achieving its goal of securing a reliable energy supply"). However, they recognize this Court has already addressed this question in its Case Management and Scheduling Order (After Remand). (ECF No. 157, PageID.19234.) Either way, Defendants cannot justify the ILCR adopted in U-18444.

"rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

## IV.   **ARGUMENT**

The Commissioners did not satisfy strict scrutiny at trial concerning their determination that the MPSC could implement an ILCR in Docket No. U-18197 or the ILCR actually adopted in Docket No. U-18444. Nor can they do so now. For the purposes of this Motion, however, the Plaintiffs set aside for now the question of whether the Commission could theoretically construct an ILCR that satisfies strict scrutiny (which it cannot), and ask the Court to affirm that the ILCR method actually approved in Docket No. U-18444 fails.

Strict scrutiny demands both a "legitimate local interest," *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 392 (1994), and the adoption of the "*least* discriminatory alternative." *Hughes*, 441 U.S. at 337–38. An ILCR calculated by a false "need," using a calculation motivated solely by "equity" meets neither requirement. Accordingly, the ILCR adopted in Docket No. U-18444 fails strict scrutiny. Partial summary judgment must be granted in Plaintiffs' favor.

> **A.   The Adopted ILCR Can Only Survive Strict Scrutiny if Defendants Prove that an Equity-Based ILCR is "the Only Means of Achieving its Goal of Securing a Reliable Energy Supply."**

The Sixth Circuit held that ILCR is facially discriminatory. *Energy Michigan*, 126 F.4th at 487–88. Thus, it is "*per se* invalid" unless the Commissioners can satisfy

13

the heavy burden of strict scrutiny. *C & A Carbone,* 511 U.S. at 392. In other words, Defendants bear the high burden of showing they have "no other means to advance a legitimate local interest." *Id*.

The State must supply "*more than mere speculation* to support discrimination against out-of-state goods." *Granholm v. Heald*, 544 U.S. 460, 492 (2005) (emphasis added). Rather, this extremely high burden requires "*concrete record evidence* that a State's nondiscriminatory alternatives will prove unworkable." *Granholm*, 544 U.S. at 492–93 (emphasis added); *see also SDDS, Inc. v. State of S.D.,* 47 F.3d 263, 268, n. 8 (8th Cir. 1995) (states can only meet strict scrutiny "if the state demonstrates that the out-of-state articles are more dangerous than … in-state articles."); *Maine v. Taylor*, 477 U.S. 131, 140–51 (1986). "The state's burden of justification" for strict scrutiny under the Commerce Clause "is so heavy that '*facial discrimination by itself may be a fatal defect*." *Oregon Waste Sys., Inc. v. Dep't of Envtml. Quality*, 511 U.S. 93, 101 (1994), quoting *Hughes*, 441 U.S. at 337 (emphasis added). And, even if there are no "nondiscriminatory" alternatives, the State's choice must be "the 'least discriminatory alternative' to advance a legitimate purpose . . . ." *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 997 (9th Cir. 2002).

The Sixth Circuit's explanation of "strict scrutiny" was clear and consistent with these authorities. And, as the law of the case (and a binding "mandate rule") on

14

remand, this Court is bound to follow that holding. *Samons v. Nat'l Mines Corp.*, 25 F.4th 455 (6th Cir. 2022). In particular, the Court noted that strict scrutiny is an "imposing standard." *Energy Michigan*, 126 F.4th at 501. It "requires [the MPSC and Consumers] to show that the ILCR 'advances a legitimate local purpose that *cannot* be adequately served by reasonable nondiscriminatory alternatives." *Id*., citing *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988). Because "equity becomes a proxy for discrimination against interstate commerce," "that purported local interest [of achieving 'equity'] should not be part of the strict scrutiny analysis." *Energy Michigan*, 126 F.4th at 501. Rather, the sole question is "whether the state demonstrated that the ILCR is *the **only** means* of achieving its goal of securing a reliable energy supply." *Id*. (emphasis added).

### B. Defendants Cannot Demonstrate that an Equity-Based ILCR that Excludes New Generating Resources is the "Only" Means of Achieving a Reliable Energy Supply.

Applied here, the Commissioners' ILCR fails this exacting standard for at least two reasons. <u>First</u>, the adopted ILCR is justified only by the equitable considerations that were rejected as improper and irrelevant by the Sixth Circuit. <u>Second</u>, even if the Commissioners could support an ILCR generally (which they cannot), the actual ILCR adopted here is not the "least discriminatory alternative" because it expressly divorces the imposed demand from a real "need." Thus, it is <u>not</u> narrowly tailored as strict scrutiny requires. For those reasons, this Court must grant

partial summary judgment and invalidate the ILCR adopted in the MPSC's June 28, 2018 Order in Docket No. U-18444.

> **1.**     ***The ILCR adopted by MPSC is not supported by a "legitimate interest" but rather was justified only by an illegitimate, equity-based rationale.***

First, the Court must invalidate the MPSC's Order in U-18444 because the ILCR adopted by the MPSC is supported solely by an impermissible, equity-based rationale. Therefore, it does not serve a "legitimate local interest." *C & A Carbone, Inc.*, 511 U.S. at 392.

The testimony from trial was clear on this point: the adopted ILCR was framed to support an impermissible equity rationale. Indeed, MPSC Staff Cathy Cole explained at trial that the *sole* reasoning for excluding new resources from the ILCR's "incremental need" calculation is that, "[i]f we counted the new capacity . . . it would be the status quo forever and *there would be no contributions to local reliability from anyone who isn't already contributing*." (ECF No. 101, PageID.3864) (emphasis added). Roger Doherty agreed that this was the reason for excluding new resources from the calculation. (ECF No. 102, PageID.4052–53.) Doherty explained that: "[i]f those resources exist, then there wouldn't be a reliability concern." (PageID.4067.) He conceded further that "the exclusion of the new resources from the methodology ***is not reliability based, but equity based*** in terms of who is paying for it." (PageID.4067) (emphasis added). And this Court

rightly concluded that the incremental need "recommendation was motivated by equity, not reliability, concerns . . . ." (ECF No. 114, PageID.4735.) Thus, excluding new resources from the "incremental need" calculation is justified only by the "equity" rationale that the Sixth Circuit has already rejected.

Yet the Sixth Circuit was explicit that "equity" could not satisfy strict scrutiny. *Energy Michigan*, 126 F.4th at 501. The Court observed that the "equity" rationale propounded by MPSC is really just discrimination in disguise. *Id.* As the Court explained, "an interest in achieving reliability in an equitable manner—that is, a manner that ensures everyone procures energy locally—is not" a "legitimate local interest." *Id*. Instead, "this formulation simply repackages a *per se* violation of the dormant Commerce Clause as an interest in discriminating against those retailers who do not procure their goods locally." *Id*. In other words, an ILCR that is calculated based on this rationale cannot meet "strict scrutiny" because it lacks a "legitimate local purpose." *Id.*; *C & A Carbone, Inc.*, 511 U.S. at 392. Yet that is exactly what the ILCR adopted in U-18444 reflects.

Accordingly, the ILCR actually adopted by Commissioners in its June 28, 2018 Order in Docket No. U-1844 is not supported by any "legitimate interest" of the State. The Sixth Circuit has already determined that the MPSC's "equity" rationale is an *illegitimate* and discriminatory interest, not a "legitimate" one. *Energy*

17

*Michigan*, 126 F.4th at 501; *C & A Carbone, Inc.*, 511 U.S. at 392. For that reason alone, the ILCR fails strict scrutiny.

> **2.** ***Even if the Court found there were no nondiscriminatory alternatives, the ILCR fails strict scrutiny because it is not "narrowly tailored."***

Additionally, the Court must invalidate the Order in U-18444 because the Commissioners' adopted ILCR is not the "least discriminatory alternative" that the MPSC could have adopted *even if* an ILCR were "necessary" in the abstract. Thus, it is not "narrowly tailored" as strict scrutiny demands. *Conservation Force, Inc.*, 301 F.3d at 997 (noting "narrow tailoring" requires proof that the chosen regulation is "the least discriminatory" alternative); *Hughes*, 441 U.S. at 337–38 (a state must choose "the least discriminatory alternative"); *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 136 (1978) (Blackmun, J., concurring) ("If discrimination results from a [law], the burden falls upon the state or local government to demonstrate the legitimate local benefits justifying the inequality and to show that *less discriminatory alternatives cannot protect the local interests*.") (Emphasis added).

Even where a "legitimate local purpose is found," the strict scrutiny question is "whether it could be promoted as well with a lesser impact on interstate activities." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see also Pac. Northwest Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994); *Nat'l*

*Foreign Trade Council v. Natsios*, 181 F.3d 38, 70 (1st Cir. 1999), aff'd sub nom *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000). In other words, is it as "narrowly tailored" as possible to relieve or lessen the discriminatory burden on interstate commerce? Courts have routinely held that laws are *not* "narrowly tailored" if some other means of achieving the "legitimate local purpose" could be adopted that would be less restrictive than the State's chosen means. *See, e.g., Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 343 (2001) ("Because the Defendants have presented no evidence as to why a narrower capping statute would not adequately address the identified health and safety concerns for Virginia citizens, the Defendants fail to survive the Plaintiffs' motion for summary judgment with respect to the second prong of the strict scrutiny test"); *Nat'l Foreign Trade Council*, 181 F.3d at 70 (noting "Massachusetts would need to show that it has *no less discriminatory means*" of achieving its goal and "has not done so, or even attempted to do so").

Here, the ILCR actually adopted by the Commissioners plainly is not the "least discriminatory alternative" because its methodology is intentionally divorced from reliability concerns. As the Commissioners' witnesses explained, the "incremental need" methodology is designed to exclude "new" resources—*i.e.*, those built after 2017—from the calculated "need." (ECF No. 101, PageID.3840–41 & 3843.) Even when resource retirements are replaced by new, in-zone generating

19

resources with the same nameplate capacity, the "incremental need" calculation excludes those. (ECF No. 102, PageID.4054–55.) So, even when 30 MW of in-zone capacity is retired and replaced by 30 MW of identical, in-zone capacity, the "need" still grows. (PageID#4055.) That is true even though "we haven't actually lost any megawatts in the zone." (*Id.*, PageID.4054.) Thus, the calculated "need" in the "incremental need" formula adopted in U-18444 is wholly artificial.

Reliability cannot justify this skewed calculation. At the original trial, expert James Dauphinais explained that new generating resource additions "are there. They are real. They exist. They need to be included" in the calculation of any "need." (PageID.3971.) In other words, these excluded generating capacity resources are those that *have been built* but that the State has irrationally excluded them from the calculation of an "incremental need" in order to drive up investment in Michigan's generating capacity. (ECF No. 139-5, PageID.15327–28.) Since the "incremental need" methodology is based on a calculation involving subtracting in-zone resources from the Zonal LCR value determined by MISO, (*id.*), excluding resources that already exist has nothing to do with determining the existing "need." (PageID.3936–37.) "Incremental *need*" is thus a pseudonym—as the existence of a "need" does not express a "real need." (*Id.*) Instead, as existing generating resources are retired and replaced by other in-zone resources, the calculation simply inflates the "incremental need" to "an artificially elevated value." (PageID.3972.)

Again, the MPSC offered a wholly equity-based rationale for excluding new resources from this calculation. (ECF No. 101, PageID.3864; ECF No. 102, PageID.4052–53 & 4067.) Put simply, if 1,000 MW of in-state generation resources are truly "needed," then all of the existing generation resources must be counted to determine whether a "need" exists and if the "need" is met. Failing to count real "need" is nowhere near the "least discriminatory alternative"—even if a geographically discriminatory requirement could be justified in the abstract. *Hughes*, 441 U.S. at 337–38. Therefore, the ILCR adopted in Docket No. U-18444 does not withstand strict scrutiny.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

For both of those reasons, this Court must strike the ILCR as formulated by Commissioners in its June 28, 2018 Order in Docket No. U-18444 as the Commission's adopted ILCR violates the Dormant Commerce Clause. The Court should grant partial summary judgment in Plaintiffs' favor.

<div style="margin-left: 40%;">Respectfully Submitted,</div>

| | |
|---|---|
| */s/ Zachary C. Larsen* | */s/ Brion B. Doyle* |
| Michael J. Pattwell (P72419) | Brion B. Doyle (P67870) |
| Zachary C. Larsen (P72189) | Timothy J. Lundgren (P62807) |
| *Counsel for ABATE* | Laura A. Chappelle (P42052) |
| Clark Hill PLC | Justin Ooms (P82065) |
| 215 S. Washington Square, Ste. 200 | *Counsel for Energy Michigan* |
| Lansing, MI 48933 | Varnum LLP |
| (517) 318-3100 | Bridgewater Place |
| mpattwell@clarkhill.com | P.O. Box 352 |
| zlarsen@clarkhill.com | Grand Rapids, MI 49501 |

<div style="text-align:center;">21</div>

bbdoyle@varnumlaw.com
tjlundgren@varnumlaw.com
lachappelle@varnumlaw.com
jkooms@varnumlaw.com

Dated: September 2, 2025

22

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, I electronically filed the above document with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Zachary C. Larsen*
Zachary C. Larsen (P72189)
Clark Hill PLC
215 S. Washington Square, Ste. 200
Lansing, MI 48933
(517) 318-3100
zlarsen@clarkhill.com

23